RENDERED: MARCH 27, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0933-ME

ROBERT WALTER BOSS APPELLANT

v. APPEAL FROM FRANKLIN FAMILY COURT
HONORABLE SQUIRE WILLIAMS, III, JUDGE
ACTION NO. 25-D-00068-002

ANNA MICHELLE BOSS APPELLEE

OPINION AND ORDER
AFFIRMING AND DENYING MOTION TO STRIKE APPELLEE BRIEF

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND CETRULO, JUDGES.

CALDWELL, JUDGE: Robert Walter Boss ("Robert") appeals from a Domestic Violence Order ("DVO") granted for Anna Michelle Boss ("Anna"). We affirm the DVO and deny Robert's motion to strike Anna's appellee brief.

## FACTS

On April 18, 2025, Anna filed a petition for an order of protection in the Franklin Family Court. The petition alleged that on April 17, 2024, Robert had

engaged in acts of domestic violence and abuse. It also alleged that on April 18, 2018, Robert shoved Anna "into a wall by her neck" and that Robert had been "physical" with her numerous times in the past, including breaking her wrist several years prior. The petition further stated Robert had masturbated in the room he shared with the parties' toddler son, that Anna planned on filing for divorce from Robert soon, and that Anna feared Robert would continue to be physical with her. (Petition for Order of Protection filed April 18, 2025—attached as Appendix 3 to Appellant red brief).[1]

The Franklin Family Court denied the first petition, stating the petition failed to state an act or threat of domestic violence.

Several days later, in early May, Anna filed another petition for an order of protection ("the second petition"). The second petition generally alleged that on April 18, 2025, Robert had engaged in acts of domestic violence or abuse. Further details were provided in a typewritten attachment. Anna alleged she told Robert she did not want him to sleep in their son's room anymore due to suspicions that Robert had been masturbating in front of their son. (Anna indicated her suspicions were based on her son's mimicking masturbatory behavior.)

---

[1] The first petition is not included in the record on appeal for this case, although Robert has requested that this Court take judicial notice of the first petition. Anna did not object to the request that this Court take judicial notice of the first petition in her appellee brief. Anna's appellee brief also discusses the contents of the first petition.

Anna further alleged Robert put their son to bed that night and would not let her near the child. Anna alleged she tried to remain calm and not escalate the situation but that when she heard Robert get up to go to the bathroom, she went into the room to remove her son. Anna alleged trying to talk with Robert when he returned and his putting his hand under her throat and pushing her into the hallway where she fell against the wall and banged her head. Anna alleged she again tried to retrieve her son but when she put her arm in the door, Robert slammed the door on her arm and then barricaded himself in the room with a chair. Anna alleged she eventually was able to get her son after Robert got out of the chair and went to sleep.

The second petition further alleged Anna went to the police department the next day, where an officer took her information and statement. Indicating an officer filled in information on the first petition, the second petition stated the first petition listed incorrect years—2024 and 2018—along with the April 18th date.

The second petition also alleged that Robert had a history of physically striking Anna after becoming angry and the petition acknowledged that Anna had not reported those prior incidents. The petition further alleged that in September 2023, Robert grabbed Anna's arm during an argument and twisted it before pushing her to the floor and breaking her arm. The second petition further

-3-

alleged Anna and the parties' two minor children had recently left the family home to live with her aunt and uncle due to her fear of Robert. The second petition also included allegations of financial abuse, and that Anna had "been told on a regular basis that he hates me and if he could kill me, he would." (Record on Appeal, ("R"), p. 6).

The family court granted Anna an Emergency Protective Order ("EPO"). The case proceeded to an evidentiary hearing for the court to consider whether to issue a DVO.

Anna, her aunt, and Robert testified at the DVO hearing held on May 14, 2025. Anna testified about the alleged pushing/door-slamming incident that past April and Robert's alleged history of prior abuse. Anna's aunt testified to trying to help Anna and the children and taking them into the aunt's home, and to Anna's telling her on the telephone that Robert had threatened to kill Anna.

Robert denied Anna's allegations of domestic violence and abuse. However, he admitted to recently barricading himself in the room he shared with his son. He also admitted to freezing the couple's credit cards and accounts because, according to him, Anna had been emptying out the accounts. He pointed out that he and his son had separate beds in the bedroom they shared. He denied that his son saw him masturbating, asserting the son was asleep when this occurred.

Following the hearing, the court granted the DVO from which Robert appeals. The judge orally stated that he found, by a preponderance of the evidence, that acts of domestic violence had occurred and may occur again. The judge indicated this finding was based on evidence of Robert's pushing Anna and slamming a door on her arm and of his threatening to kill her. The family court judge orally stated that he put no weight on any evidence about a broken arm or wrist in finding domestic violence occurred. The judge also orally stated that the court would not be issuing any orders about the children in the DVO proceeding. The judge explained that Robert and Anna also had a pending divorce case and that issues about the children's custody would be resolved in the divorce case.

The court checked a portion of the AOC[2] DVO form stating the court found, by a preponderance of the evidence, that an act or acts of domestic violence occurred and may occur again. The DVO was also accompanied by the judge's handwritten calendar notes, which included the statement: "DV [domestic violence] found and may occur again." (R, p. 25). The family court also attached to the DVO handwritten findings of fact, stating Robert had pushed Anna against a wall with his hand on her neck and shut a door on her arm and Robert threatened to kill Anna. (R, p. 29).

_____

[2] Administrative Office of the Courts.

The DVO restrained Robert from any further acts or threats of domestic violence and from any unauthorized contact with Anna for three years. Robert filed a motion to alter, amend, or vacate the DVO. After this motion was denied, Robert filed a timely appeal from the DVO.

Further facts will be provided as needed in our analysis.

## ANALYSIS

### Standard of Review

Robert failed to include an explicit preservation statement at the beginning of his argument indicating if and how the issues he raised on appeal were also raised to the family court. *See* RAP[3] 32(A)(4). However, most of the issues Robert raised on appeal were also raised to the family court based on our review of the record. Thus, unless otherwise noted, we leniently review the issues presented on appeal under otherwise applicable standards of review rather than reviewing solely for palpable error or declining to review issues for lack of preservation.[4]

---

[3] Kentucky Rules of Appellate Procedure.

[4] Failure to identify how an issue was preserved for review can result in an appellate court reviewing the issue solely for palpable error resulting in manifest injustice or not even reaching the issue at all if palpable error review is not requested. *See Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021); *J.P.T. v. Cabinet for Health and Family Services*, 689 S.W.3d 149, 153 (Ky. App. 2024). *See also* Kentucky Rules of Civil Procedure ("CR") 61.02.

Also, the index to the appellant brief appendix does not state where the attached items are located in the record. *See* RAP 32(E)(1)(d). Moreover, the item placed immediately after the

-6-

Generally, we review the decision to issue a DVO for abuse of discretion and findings of fact for clear error:

> We review the entry of a DVO for whether the trial court's finding of domestic violence was an abuse of discretion. Our review of the trial court's factual findings is limited to whether they were clearly erroneous. A trial court's factual determination is not clearly erroneous if it is supported by substantial evidence, which is evidence of sufficient probative value to induce conviction in the minds of reasonable people.

*Johnston v. Johnston*, 639 S.W.3d 428, 431 (Ky. App. 2021) (citations omitted).

We review the trial court's resolution of purely legal issues such as statutory interpretation *de novo*, meaning without deference. *Pennie v. Mohamed*, 720 S.W.3d 606, 614 (Ky. App. 2025). "We review the family court's rulings on the admissibility of evidence for abuse of discretion." *Id*. at 617.

With these parameters in mind, we consider the parties' arguments on appeal. First, we consider Robert's argument that the family court erred in granting the DVO on the second petition after dismissing Anna's first petition.

---

index to the appendix is not actually the order we are reviewing in this appeal (the DVO granted May 14, 2025). *See* RAP 32(E)(1)(a). Instead, the first item in the appellant brief appendix is the EPO granted by the family court on May 2, 2025.

Though we decline to impose sanctions, we urge counsel to carefully review the Kentucky Rules of Appellate Procedure before filing appellate briefs in the future. Moreover, we direct counsel's attention to the helpful resources, including appellate briefing checklists and a basic appellate handbook, available on our court website. https://www.kycourts.gov/Courts/Court-of-Appeals (last visited Feb. 12, 2026).

**No Reversible Error in Granting DVO After Dismissal of First Petition**

Robert argues the family court's findings were not supported by substantial evidence because the court had previously denied Anna's first petition, which contained similar allegations to those in the second petition. He notes the first petition was denied with the stated basis that it failed to allege acts or threats of domestic violence.

Robert points out the first petition, like the second petition, alleged that Robert had shoved Anna into a wall and injured her arm and that she feared Robert would be physical with her when he found out she was filing for divorce. Robert states he was the one who ended up filing for divorce—a few days before Anna filed her second petition, which he suggests was filed in retaliation. He suggests it was improper for the family court to grant the DVO on the second petition after dismissing the first petition for failure to allege an act of domestic violence.

Unlike Robert, Anna contends that the family court's denial of her first petition did not preclude it from considering her second petition. She asserts

the first petition was not dismissed with prejudice and that she was not precluded from filing an amended petition.[5]

Despite Robert's contentions to the contrary, we agree with Anna that the dismissal of the first petition did not preclude the family court from considering her second petition and from ultimately granting a DVO based on the record here.

KRS[6] 403.730(1)(a) provides:

> The court shall review a petition for an order of protection immediately upon its filing. If the review indicates that domestic violence and abuse exists, the court shall summons the parties to an evidentiary hearing not more than fourteen (14) days in the future. If the review indicates that such a basis does not exist, the court may consider an amended petition or dismiss the petition without prejudice.

While the family court's dismissal of the first petition did not state whether the dismissal was with or without prejudice, KRS 403.730(1)(a) clearly provides that if the court's review indicates no basis for finding domestic violence and abuse exists, the dismissal of the petition is without prejudice. Also, KRS 403.730(1)(a) indicates the dismissal of a petition for an order of protection for

---

[5] In his reply brief, Robert contends Anna could not file an amended petition but only a new one. He also argues she made additional and/or more detailed allegations in the second petition which had the effect of bolstering her claims.

[6] Kentucky Revised Statutes.

failure to state an act of domestic violence does not preclude the court from later considering another petition involving the same parties.

In sum, we discern no reversible error in the family court's issuing the DVO on the second petition despite its dismissing the first petition. Next, we consider Robert's argument that the family court rendered insufficient findings because it did not make a finding that abuse was likely to occur again.

### Family Court Made Required Findings that Domestic Violence Occurred and May Occur Again

Robert points out the family court's handwritten findings of fact, contained at page 29 of the record, do not contain a finding that domestic violence was likely to occur again. However, the family court's docket notes (located on page 25 of the record) contain a finding that domestic violence occurred and may occur again—which is also consistent with a box checked on the AOC DVO form.

Despite Robert's argument that the family court erred in granting a DVO without finding that abuse was **likely** to occur again, courts are not required to find that abuse is **likely** to occur again to issue DVOs. Instead, a court may properly issue a DVO if it finds domestic violence or abuse has occurred and **may** occur again.

KRS 403.740(1) states: "Following a hearing ordered under KRS 403.730, if a court finds by a preponderance of the evidence that domestic violence

-10-

and abuse has occurred and **may** again occur, the court may issue a domestic violence order[.]" (Emphasis added.)

The family court made the statutorily required findings in writing. It checked the box on the AOC DVO form stating that the court found, based upon a preponderance of the evidence, that domestic violence or abuse had occurred and may occur again. The court also attached to the DVO handwritten docket notes stating it found "DV [(domestic violence) occurred] and may occur again" (R, p. 25) in addition to other findings of fact contained at page 29 of the record.

These were sufficient written findings to satisfy KRS 403.740(1). *See generally Williford v. Williford*, 583 S.W.3d 424, 430 (Ky. App. 2019); *Pettingill v. Pettingill*, 480 S.W.3d 920, 925 (Ky. 2015).

Having addressed arguments about whether the family court made statutorily required findings, we now turn our attention to arguments about the family court's assessments of credibility and the weight of the evidence.

### No Reversible Error in Family Court's Assessment of Anna's Competency, Credibility, or the Weight of Her Testimony

Robert contends on appeal that the family court failed to properly assess Anna's credibility and gave undue weight to her testimony. He asserts Anna appeared to be under the influence and confused at the DVO hearing and

gave vague and contradictory responses to questions.[7]  As Anna points out, Robert

seemingly suggests Anna was not competent to testify.  Yet, the family court was

in the best position to observe her testimony and had the discretion to determine

whether she was competent.  *Pendleton v. Commonwealth*, 83 S.W.3d 522, 525

(Ky. 2002).

Moreover, Robert did not express any concerns about her competency

during the hearing for the judge to keep in mind while observing her testimony.

Instead, Robert first asserted Anna was under the influence in his motion to alter,

amend, or vacate.

Given the lack of egregiously obvious signs of intoxication based on

our review of the hearing recording and the minimal requirements for finding a

witness competent, *see* KRE[8] 601(b), we discern no reversible error in the family

court's not determining that Anna was incompetent to testify.  Next, we address

arguments about the credibility and weight of her testimony.

Robert points to inconsistencies in Anna's testimony, including

whether her wrist or her arm had been broken, on what dates various events

---

[7] Robert did not raise any issues about Anna appearing to be confused or under the influence at
the DVO hearing, although he did raise these same arguments in his motion to alter, amend, or
vacate.  Anna alluded to medical issues and to having recently had surgery in her testimony.  She
also acknowledged that she was recovering from surgery in her response to the motion to alter,
amend, or vacate.  However, she denied being on prescription medication or consuming any
alcohol or memory-impairing drugs for months before the DVO hearing.

[8] Kentucky Rules of Evidence.

occurred, and where she was staying on certain dates. He also claims the family court failed to properly consider evidence of Anna's acting in a retaliatory manner—*i.e.*, her filing her second petition after he filed for divorce and her admitting to having once stated she would not press charges against him if he let her keep the children. So, he suggests the court over-estimated her credibility. He further asserts the court failed to give sufficient weight to her admissions that she had not previously reported her allegations to the Cabinet for Health and Family Services ("the Cabinet") or to police before seeking an order of protection.

Robert also points out Anna did not present documentary evidence or call treating medical professionals to testify at the DVO hearing. Anna points out that it is often difficult to come forward with medical evidence given how quickly domestic violence cases are heard. She also emphasizes the non-heightened standard of preponderance of the evidence.

Whether or not Anna's testimony was entirely consistent on every detail, or whether it was supported by medical evidence or prior reports to government authorities, or whether or not it might be construed to suggest a retaliatory motive, is not ultimately determinative. In this case, the family court simply found that Robert engaged in domestic violence by pushing Anna and slamming a door on her arm.

As Robert notes, the court made no specific finding of financial abuse. Moreover, the judge made clear in oral remarks that the court was not basing its finding of domestic violence on any testimony or other evidence about Anna's having broken her arm or wrist. Also, the court's written findings do not specifically mention any particular medical injury to Anna's arm or wrist. Thus, any inconsistencies in Anna's testimony about the details of financial transactions or whether she had broken her arm or wrist were immaterial since the family court did not base its finding of domestic violence on financial abuse or on any fracture of Anna's arm or wrist.

In finding domestic violence based specifically on Robert's pushing Anna against the wall with his hand on her neck and slamming a door on her arm,[9] the family court obviously found Anna's testimony about this specific incident more credible than Robert's denial of the specific pushing or door-slamming acts—despite any inconsistencies in Anna's testimony. Such assessments of credibility from the family court must be viewed with significant deference by this court. *See, e.g.*, CR 52.01. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Moreover, as both parties acknowledge, the family court as factfinder had the prerogative to find one party's testimony more credible than the other and the court

---

[9] Apparently, the court also based its finding of domestic violence partly on Anna's aunt's testimony about her hearing Anna say Robert threatened to kill Anna—which we shall address separately later.

-14-

could believe all or part of the testimony of either party witness. *See, e.g.*, *Bissell v. Baumgardner*, 236 S.W.3d 24, 29–30 (Ky. App. 2007).

In declining to make findings of domestic violence based on a broken wrist or broken arm and in not specifically finding financial abuse, the family court perhaps indicated that it did not put great weight on Anna's testimony about these specific matters. Or perhaps it did not view her testimony on these matters to be as credible as her testimony about the specific pushing, door-slamming incident. On the other hand, the court also evidently did not place great weight on Anna's admission to not previously reporting domestic violence allegations to the Cabinet or police—which it also did not discuss in its written findings.

Again, the family court had the prerogative to believe Anna's testimony in whole or in part and we must defer to its assessments of credibility and the weight of the evidence. *See, e.g.*, CR 52.01. Moreover, we conclude the family court's finding of domestic violence based on the recent pushing, door-slamming incident is supported by substantial evidence and not clearly erroneous.

In sum, there is no reversible error in the family court's assessment of Anna's competency, credibility, or the weight to be placed on her testimony. Next, we address Robert's argument that his admissions on certain matters do not support the finding of domestic violence.

-15-

**No Reversible Error Concerning Robert's Admissions in Trial Testimony**

Robert argues that admissions in his trial testimony do not support the family court's findings of domestic violence. The family court's written findings do not explicitly discuss Robert's admissions on these matters, so its finding of domestic violence does not appear to depend on these admissions. And in any event, we discern no reversible error regarding the family court's consideration of such admissions in issuing the DVO.

Robert acknowledges in his initial appellant brief that he admitted to certain actions in his trial testimony, but he contends these admissions do not support issuing the DVO. For example, he admitted to freezing the couple's accounts on one occasion due to Anna's over-spending (according to him). But as Robert points out, the family court made no specific finding of financial abuse. Robert also suggests that allegations of financial abuse in the petition were not substantiated. But since the family court made no finding of financial abuse and did not specifically address the parties' testimony about financial matters in its written findings, any error in the family court's consideration of his admission about freezing accounts does not appear to affect Robert's substantial rights and is harmless. CR 61.01.

Similarly, Robert contends his admission that he blocked Anna's access to the bedroom he shared with his son does not support the family court's

-16-

finding of domestic violence (which was largely based on Robert's having pushed Anna into the wall and slammed a door on her arm). Robert also points to conflicts in Anna's testimony about whether their son was asleep on the night in question. He also emphasizes his testimony that he did not sleep in the same bed as his son and his denial of the child's being aware of Robert's masturbating.

The family court made no express mention of Robert's admitting to barricading himself in its written findings. Moreover, the family court made no finding of the child's having witnessed anything inappropriate or otherwise being harmed or subjected to any type of abuse in the DVO proceeding. Instead, the court simply made findings of domestic violence directed at Anna and the DVO does not list the parties' son as a protected party. Thus, we discern no reversible error in the family court's consideration of Robert's admissions about blocking Anna's access to the bedroom he shared with his son, of evidence of sleeping arrangements in this room, and of Robert's denial that his son saw him masturbate. None of these matters were mentioned in written findings.

We find no reversible error in the family court's assessments of the weight and credibility of both parties' testimony. While the family court's specific findings may not indicate that it entirely believed either party, its finding of domestic violence consisting of Robert's pushing Anna and slamming a door on her arm is supported by substantial evidence and is not clearly erroneous.

Moreover, the court did not abuse its discretion in issuing the DVO based on its finding about this pushing/door-slamming incident, which fits the statutory definition of domestic violence. *See* KRS 403.720(2)(a) (defining *domestic violence and abuse* as including physical injury, assault, or infliction of fear of imminent physical injury between family members). Next, we address Robert's assertion that the family court erred in relying on hearsay testimony from Anna's aunt.

**Any Error in Reliance on Any Hearsay Testimony from Anna's Aunt is Harmless**

Robert contends the DVO must be reversed because the family court improperly based its finding of domestic violence on hearsay testimony from Anna's aunt. In addition to making findings about Robert's having pushed Anna and slammed a door on her arm, the family court also specifically found that Robert threatened to kill Anna.

Anna made a sworn statement in her second petition alleging she had been told that Robert would kill her if he could. But Anna did not specifically testify at the DVO hearing to Robert's threatening to kill her.[10] However, Anna's aunt testified to Anna's telling her that Robert had threatened to kill Anna.

_____

[10] Anna was not asked to adopt the sworn statements in her petition as part of her testimony. Despite not testifying at the DVO hearing to Robert's threatening to kill her, Anna did testify at that time to being afraid of Robert, to Robert's threatening to kill himself, and to Robert's having anger issues and many guns in his possession.

-18-

The parties disagree about whether Anna's aunt's testimony about Anna's telling her of Robert's threatening to kill Anna was admissible. They also disagree about whether the issue regarding this testimony's admissibility was properly preserved. Anna points out that Robert did not immediately object after Anna's aunt's testimony that Anna told the aunt Robert threatened to kill Anna. Robert points out the testimony in question quickly followed his counsel's request that Anna's aunt testify only to matters within her direct knowledge, after which the judge said he was overruling the objection. Robert also points to a later portion of the aunt's testimony where she began to say she knew something was hearsay right before Anna's attorney stopped her and said not to testify to hearsay.

Regardless of whether the issue was properly preserved or whether the statement in question was inadmissible hearsay, any error in the family court's reliance on the testimony in question was harmless. *See* CR 61.01; KRE 103(a).

As previously discussed, the family court issued factual findings supported by substantial evidence and did not abuse its discretion in finding domestic violence consisting of Robert's having pushed Anna into a wall with his hand on her neck and having slammed a door on her arm. Moreover, this finding of the pushing and door-slamming incident was, by itself, sufficient to support the court's finding that domestic violence had occurred. Also, ample testimony—**besides** Anna's aunt's testimony about what Anna told her and **besides** evidence

-19-

about the alleged wrist or arm fracture and financial occurrences which the family court declined to make findings about—supported the finding that domestic violence may occur again. For example, Anna's testimony about Robert's history of being "physical" with her and her testimony about their recent conflicts is substantial evidence supporting a finding that domestic violence may occur again.

In sum, we conclude the family court's admission of and apparent reliance on Anna's aunt's testimony about Anna's saying Robert threatened to kill Anna was, at most, harmless error. Next, we address Robert's claims of procedural deficiencies including those related to the family court's holding the DVO hearing by Zoom.

**No Reversible Error in Holding DVO Hearing by Zoom**

Robert points out the DVO hearing was held by Zoom due to then-existing flooding in the Franklin County Courthouse. He alleges there were delays and technical glitches resulting in the parties' sometimes talking over each other and his attorney's having trouble understanding some of the testimony and the judge's oral statements about the court's ruling. He also claims the family court should have perceived that Anna was under the influence during the hearing. He further asserts that there were times when Anna's aunt was apparently looking at Anna and Anna would shake her head yes or no during her aunt's testimony.

Robert does not point to any objection about proceeding by Zoom or request to repeat anything due to technical difficulties during the hearing. However, he claimed in his motion to alter, amend, or vacate that Anna appeared impaired during the hearing and that the Zoom link was unstable making it hard for his attorney to understand what was being said and, in his view, resulting in his being denied a fair hearing.

Anna points out, however, that other than Robert's attorney's expressing difficulty in trying to share her screen, no issues about technical glitches or difficulty understanding testimony or the court's rulings were raised to the family court during the DVO hearing. She asserts Robert's attorney appeared to be taking notes and nodding along during the hearing, giving the impression that she was not having difficulty following the hearing.

Anna further points out that Zoom hearings have become routine in recent years following the COVID-19 pandemic and that judges have become used to observing witnesses by Zoom. She emphasizes the lack of contemporaneous objection or request for a continuance, asserts Robert previously participated in hearings by Zoom due to his being out of state, and argues the Zoom hearing did not result in bias against or any other harm toward Robert.

Even if we assume Robert preserved issues about the Zoom hearing through his motion to alter, amend, or vacate, we discern no reversible error.

Other than Robert's attorney's noting some difficulty with sharing her screen and opting to share information through Robert's testimony instead, no technical problems with the Zoom hearing were brought to the family court's attention during the hearing. Moreover, the motion to alter, amend, or vacate did not specifically identify the testimony or judge's oral statements that Robert's attorney did not hear or understand, nor did the motion explain how this resulted in prejudice to Robert. Also, there is no indication that the judge was unable to hear and understand any of the testimony presented. *Compare K.D.H. v. Cabinet for Health and Family Services*, 630 S.W.3d 729, 740–41 (Ky. App. 2021) (in termination of parental rights proceeding, holding parent was denied a fair hearing due to repeated, documented technical difficulties clearly affecting the judge's ability to hear and understand the parent's testimony).

As for Robert's attorney's alleged inability to understand the judge's oral statements about rulings, the judge's oral statements were not formally incorporated into the DVO or written findings of fact and therefore had no controlling effect. *See Kindred Nursing Centers Ltd. Partnership v. Sloan*, 329 S.W.3d 347, 349 (Ky. App. 2010) (stating courts speak only through written orders and not through oral statements not incorporated into written orders). *See also Smith v. McCoy*, 635 S.W.3d 811, 817 (Ky. 2021) (holding that formal

incorporation of court's oral findings into a DVO utilizing the AOC DVO form was sufficient to set forth statutorily required written findings).

Moreover, as we previously discussed, the family court's written findings did not reflect a reliance on many details in Anna's testimony. Instead, the family court made written findings of domestic violence based on the recent pushing/door-slamming incident which Anna testified to and which Robert denied. Furthermore, Robert timely filed his motion to alter, amend, or vacate by counsel raising many of the issues he raises in this appeal and reflecting his counsel's understanding of the testimony presented and the family court's rulings. So, we conclude any error in conducting the hearing via Zoom was harmless. CR 61.01.

As for Anna's aunt allegedly looking at Anna for feedback during the aunt's testimony, this matter was not brought to the family court's attention through an objection during the hearing or through the post-trial motion to alter, amend, or vacate based on our review of the record. So, this issue was not properly preserved. And even if we leniently review for palpable error despite the lack of request for palpable error review, we discern no palpable error resulting in manifest injustice. CR 61.02.

In sum, we discern no reversible error arising from the family court's conducting the hearing via Zoom. Next, we shall attempt to succinctly address other procedural deficiencies asserted by Robert.

-23-

**Other Asserted Procedural Deficiencies Did Not Amount to Reversible Error**

Robert asserts Anna sought protection for the parties' two minor children as well as herself. On the second petition, boxes were checked indicating that Anna sought protection on behalf of the children as well as on her own behalf.

Since Anna sought protection on behalf of the children as well as herself, Robert contends the family court erred in not appointing a Guardian *ad Litem* (GAL) to represent the children in the DVO proceeding. He cites KRS 403.727(2), which provides in pertinent part: "If the court orders an evidentiary hearing under KRS 403.730(1)(a), a guardian ad litem shall be appointed for any unrepresented minor who is a respondent to the action or a petitioner who is an alleged victim of domestic violence and abuse." *See also Hamilton v. Milbry*, 676 S.W.3d 42, 46–47 (Ky. App. 2023).

As Anna points out, Robert did not provide a preservation statement identifying if or how any issue about not appointing a GAL for the children was raised to the family court and preserved for our review. Nor have we independently come across any instance in the record of Robert's arguing to the family court that a GAL should have been appointed for the children. Nor has Robert requested palpable error review. Thus, we may consider this issue unpreserved, and we may review this issue solely for palpable error resulting in manifest injustice or even decline to address this issue at all. *See, e.g*., CR 61.02;

*J.P.T.*, 689 S.W.3d at 153. Leniently reviewing for palpable error despite the lack of request for such review, we conclude the failure to appoint a GAL for the children did not amount to palpable error resulting in manifest injustice under the facts here.

Even assuming *arguendo* that the GAL issue had been preserved, any error in that regard was harmless to Robert[11] since the family court did not restrain Robert from having contact with the children in the DVO and it declined to issue any orders concerning the children in the DVO proceeding, instead reserving child custody issues to be resolved in the divorce case. *See* CR 61.01.

Similarly, other alleged procedural deficiencies do not entitle Robert to relief on appeal.

Robert alleges his counsel did not receive a copy of the handwritten findings of fact contained on page 29 of the record and she did not see this document until she reviewed the certified record. Based on our review of the clerk's log, it appears that neither the handwritten calendar notes appearing on page 25 nor the handwritten findings of fact appearing at page 29 of the record were initially sent to the parties' counsel. Instead, only the filled-out AOC DVO

---

[11] Although not raised by the parties, some might view Robert's standing to appeal from the family court's failure to appoint a GAL for the children as questionable since a GAL for the children would represent the children, not Robert. We need not explore that issue further for purposes of resolving this appeal, however.

form itself was sent to the parties' attorneys based on the clerk's log. Certainly, better practice would be for the court to clearly direct the clerk's office to mail copies of such informal written findings to the parties' counsel (or to any unrepresented parties) along with the filled-out AOC DVO form. Nonetheless, the failure to send out the handwritten findings along with the DVO does not merit disturbing the DVO because not affording appellate relief for this clerical mistake is not inconsistent with substantial justice. *See* CR 61.01.

We are also aware that, as Robert points out, the family court originally did not enter its order denying his motion to alter, amend, or vacate into this case's record[12] before entering into the record a *nunc pro tunc* order denying the motion to alter, amend, or vacate effective as of an earlier date. We do not perceive how any error in this regard prejudiced Robert as the court corrected the prior failure to enter the order into the DVO case record in a manner enabling Robert to proceed with this appeal. As any error in this regard was harmless, Robert is not entitled to relief on appeal. CR 61.01.

As for Robert's pointing out that the DVO did not contain language about it being final and appealable, any error in this regard was also harmless. Robert's appeal has not been dismissed as from a non-final and appealable order.

---

[12] Apparently, the order denying the motion to alter, amend, or vacate the DVO was originally entered into the divorce case record.

Moreover, the family court adjudicated the rights of all parties (including Robert, Anna, and the children) in the DVO proceeding by granting Anna an order of protection against Robert and by declining to enter orders concerning the children in the DVO proceeding since custody issues would be resolved in the divorce case. As the family court's order adjudicated all the rights of the parties in the DVO proceeding, the DVO was final and appealable, and no CR 54.02 recitation was necessary for Robert to appeal from the DVO. *See generally* CR 54.01; CR 54.02.

As for Robert's complaint that the family court's findings did not identify a specific timeframe for when the abuse occurred, any error was harmless under the facts here. While the findings of fact did not explicitly identify a date or time, the family court clearly grounded its domestic violence finding on the recent incident which Anna testified to concerning Robert's pushing her and slamming a door on her arm which she stated occurred on or about April 18, 2025, in both her hearing testimony and the second petition.

Lastly, Robert also points to the family court's reliance on alleged hearsay testimony from Anna's aunt and to the judge's oral statement about not understanding how an arm or wrist fracture occurred in Robert's arguments about procedural anomalies. We have already explained how any error regarding the family court's reliance on Anna's aunt's testimony was harmless and how the

family court's domestic violence finding did not depend on Anna's testimony about suffering an arm or wrist fracture.

Despite Robert's claims of various procedural deficiencies in the DVO proceeding, we find no reversible error. Having considered Robert's appellate brief arguments for appellate relief, we now turn our attention to his motion to strike Anna's appellee brief, which was passed to the merits.

## We Deny the Motion to Strike Anna's Appellee Brief

After Anna filed her appellee brief, Robert filed a motion to strike her appellee brief (or in the alternative, to issue a show cause order) due to Anna's including items outside the record in the appendix to her brief. *See* RAP 32(E)(1)(c). The appendix to Anna's brief includes a copy of a recent unpublished opinion from this Court,[13] as well as documents from other court proceedings. In Anna's appellee brief and in her response to Robert's motion, Anna asked this Court to take judicial notice of other court proceedings.

---

[13] Although unpublished opinions are not binding authority, parties may cite such unpublished opinions for our consideration provided certain conditions are met—including there being a lack of published Kentucky appellate precedent on point and the citing party's expressly noting that the unpublished opinion is not binding. RAP 41(A). Anna's citation to an unpublished opinion is not accompanied by the required statement that this unpublished opinion is not binding. *See* RAP 41(A)(4). We direct her counsel's attention to the Kentucky Rules of Appellate Procedure and appellate briefing resources on our court website, https://www.kycourts.gov/Courts/Court-of-Appeals (last visited Feb. 12, 2026).

We decline to take judicial notice of information or documents from these other court proceedings—especially since doing so is not necessary to resolve this appeal. We also decline to consider the unpublished opinion cited for our consideration by Anna and attached to her appellee brief appendix. Without considering the items in the appendix to Anna's brief, we have nonetheless determined that Robert is not entitled to relief on appeal. Thus, we DENY Robert's motion to strike Anna's brief or to issue a show cause order as MOOT.

Further arguments in the briefs which we have not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the DVO entered by the Franklin Circuit Court. Furthermore, it is **ORDERED** that Robert's motion to strike Anna's brief or for her to show cause is hereby **DENIED** as moot.

ALL CONCUR.

ENTERED: _____03/27/2026_____          _____
                                         JUDGE, COURT OF APPEALS

BRIEFS FOR APPELLANT:

Carrie Cotton
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Nicole S. Bearse
Frankfort, Kentucky